UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD KAIL,

        Petitioner,

vs.

DIANE SUPERNANT,

        Respondent.

Case No. 8:15-cv-2719

DIANE SUPERNANT,

        Counterclaimant,

vs.

RICHARD KAIL

        Counterclaim Defendant.

## **RESPONDENT'S AMENDED ANSWER AND COUNTERCLAIM**

As and for her Answer to Petition for Partition and Counterclaim in the above-entitled matter, Respondent DIANE SUPERNANT states and alleges as follows:

Except as is hereinafter expressly admitted, qualified, or otherwise answered, Respondent denies each and every allegation in the Petition for Partition (hereinafter "Petition").

1.      With respect to the allegations in Paragraph 1 of the Petition, Respondent admits that the parties purchased the property located at 6811 Manasota Key Road, Englewood, Florida (the "Manasota Property") but denies that Petitioner has any legal, equitable, ownership or other interest therein.

2.      The allegations in Paragraph 2 of the Petition state a legal conclusion to which no

responsive pleading is required. To the extent a responsive pleading is required, Respondent denies that Petitioner is entitled to any relief, including but not limited to partitioning of the Manasota Property.

3. With respect to the allegations in Paragraph 3 of the Petition, admits that Petitioner and Respondent are listed as the owners of record of the Manasota Property but denies that Petitioner has any legal, equitable, ownership or other interest therein.

4. With respect to the allegations in Paragraph 4 of the Petition, admits that Petitioner are listed as joint tenants with right of survivorship of the Manasota Property, but denies that Petitioner has any legal, equitable, ownership or other interest therein.

5. Admits the allegations in Paragraph 5 of the Petition.

6. Denies the allegations in Paragraph 6 of the Petition.

7. Denies the allegations in Paragraph 7 of the Petition.

8. Denies the allegations in Paragraph 8 of the Petition.

9. The allegations in Paragraph 9 of the Petition state a legal conclusion to which no responsive pleading is required. To the extent a responsive pleading is required, Respondent denies that Petitioner is entitled to any relief, including any remedy at law or in equity.

10. With respect to the allegations in Paragraph 10 of the Petition, admits that Petitioner has retained a law firm to commence this action, but lacks sufficient information regarding his financial arrangements with said law firm. Denies the remaining allegations contained therein.

## **AFFIRMATIVE DEFENSES**

1. Petitioner's Petition fails to state a cause of action upon which relief may be granted.

2. Petitioner's damages, if any, were caused by third parties over whom Respondent

has no control.

3. Petitioner's claims are barred by the doctrine of unclean hands and his inequitable and unlawful conduct.

4. Petitioner's claims are barred by the doctrines of waiver and/or estoppel.

5. Petitioner's claims are barred by the doctrine of laches.

6. Petitioner's claims are barred by failure of consideration.

7. Petitioner's claims are barred by the failure of conditions precedent and/or conditions subsequent.

8. Petitioner's claims are barred by his prior breach of contract.

9. Petitioner has failed to mitigate his damages, if any.

10. Petitioner's claims are subject to the doctrines of offset and recoupment.

11. Petitioner's claims may be barred by the applicable statute of limitations.

12. Petitioner's claims may be barred by the statute of frauds.

## COUNTERCLAIMS

Counter-Claimant, DIANE SUPERNANT, files these counterclaims against Counter-Defendant, RICHARD KAIL, and in support thereof states as follows:

## JURISDICTION AND VENUE

1. Counter-claimant, DIANE SUPERNANT, is an adult individual, *sui juris*, who is a citizen of and domiciled in the State of Minnesota. *See* Respondent's Notice of Removal.

2. Counter-defendant, RICHARD KAIL, is an adult individual, *sui juris*, who is a citizen of and domiciled in the State of Florida. *See* Respondent's Notice of Removal.

3. The amount in controversy exceeds $75,000. *See* Respondent's Notice of Removal.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), as all parties are completely diverse and the amount in controversy exceeds $75,000.

## GENERAL ALLEGATIONS

*Introduction*

5. As will be discussed in more detail below, the parties purchased and have owned various real properties over the years, from 1999 to the present. They would purchase a property, keep it for a period of time, sell it and apply the proceeds to the purchase of another property. They did this multiple times, leading to the purchase of the Manasota Property. During much of this time, Petitioner and Respondent had a romantic and confidential relationship, which Petitioner used to take advantage of Respondent, having her pay for the vast majority of all payments and expenses related to the properties, while making repeated agreements and promises to pay his share of the same.

*Sunset Drive Property*

6. Respondent and Petitioner purchased real property located at 3866 Sunset Drive in Spring Park, Minnesota ("Sunset Drive Property") in 1999, with the agreement and understanding that each of them would contribute equally to the payments and expenses associated with said property.

7. Respondent paid the earnest money and down payment for the purchase of the Sunset Drive Property, as well as nearly all of the other expenses, bills, and payments for the Sunset Drive Property. Petitioner paid very little of the payments for the Sunset Drive Property.

8. Petitioner withdrew $55,000 from the Sunset Drive Property sale proceeds for other investments, including but not limited to half of the bridge loan interest on the 2895 Casco Property.

*2895 Casco Property*

9. The parties sold the Sunset Drive Property in 2004 and used the proceeds thereof to purchase a property located at 2895 Casco Point in Orono, Minnesota (the "2895 Casco Property").

10. The parties took out a loan for approximately $600,000 to purchase the 2895 Casco Property in 2003. Since they had not sold the Sunset Drive Property prior to purchasing the 2895 Casco Property, they obtained a bridge loan for approximately $220,000, which was paid off when they sold the Sunset Drive Property.

11. The parties again agreed to contribute equally to the payments and expenses associated with the 2895 Casco Property.

12. Respondent paid nearly all of the payments and expenses associated with the 2895 Casco Property, and Petitioner paid very little of said payments and expenses.

*3753 Casco Property*

13. In 2002, the parties purchased a property located at 3753 Casco Avenue in Orono, Minnesota (the "3753 Casco Property") for $80,000.

14. The parties agreed that, upon sale of the 3753 Casco Property, they would split the net proceeds equally.

15. Respondent paid $20,000 and took out a personal loan for $60,000 to purchase the 3753 Casco Property.

16. The parties sold the 3753 Casco Property in 2003 for $150,000, when they purchased the 2895 Casco Property.

17. The parties used the net sale proceeds from the 3753 Casco Property (i.e. after payment of Respondent's payment of $20,000 and realtor commissions) to pay off amounts due for Petitioner's vehicle (approximately $29,800), to pay off amounts due for Respondent's vehicle (approximately $27,800), and they applied approximately $65,000 towards the purchase of the 2895

Casco Property (of which approximately $60,000 was Respondent's personal loan that was repaid once the parties sold the Sunset Drive Property).

18. Respondent then loaned Petitioner the sum of $11,500 to pay his taxes for 2003 capital gains with the agreement that Petitioner would repay his share of this loan to Respondent. Half of this amount (or $5,750) was for Respondent's share of the capital gains. But, Petitioner never repaid his share (i.e. $5,750) of this loan to Respondent.

*Loan to epc Solutions*

19. In or about August 2005, the parties agreed to refinance the 2895 Casco Property and use $250,000 of those funds to make a loan to a company called epc Solutions, Inc. ("EPC"), a company owned and/or controlled by Petitioner's brother, Kevin Kail, in exchange for a 4% interest in EPC. This loan to EPC was supposed to be repaid with interest.

20. In or about January 2006, the parties agreed to obtain a Smartfit equity loan in the amount of $200,000 on the 2895 Casco Property to loan to EPC, and Respondent provided an additional $50,000 from her own funds to loan to EPC. This second loan, totaling $250,000 was to be repaid with interest and the parties were to receive another 7% interest in EPC.

21. Petitioner and Respondent agreed that they would jointly own the 11% interest in EPC and that the monies repaid from EPC would be applied to the loans on the 2895 Casco Property.

22. EPC failed to repay the amounts owed to Petitioner and Respondent, who then sued EPC and Petitioner's brother (the "EPC Lawsuit"). Petitioner paid approximately $5,000 and Respondent paid approximately $35,000 towards the attorneys' fees to bring the EPC Lawsuit, even though they agreed to equally divide – and equity required that they equally divide – the costs of the EPC Lawsuit.

23. The EPC Lawsuit resulted in a settlement whereby the defendants therein agreed to repay the above-referenced $500,000 loan with interest. However, EPC paid the parties only $220,000, which was used to repay the above-referenced loans on the 2895 Casco Property.

24. EPC thereafter filed bankruptcy and, as of the date hereof, it is doubtful that Petitioner and Respondent will receive a significant portion, if any, of the remaining amounts owed from EPC.

25. The loss of over $300,000 from the equity in the 2895 Casco Property used to make the loan to EPC should be equally apportioned between Petitioner and Respondent. Since Respondent owned all of the equity in the 2895 Casco Property, Petitioner owes Respondent half of the $300,000 loss.

### *Manasota Property*

26. The parties sold the 2895 Casco Property in 2013 and used the proceeds thereof to purchase a property located at 6811 Manasota Key Road in Englewood, Florida (the "Manasota Property") in October 2013.

27. The parties agreed to contribute equally to the payments and expenses associated with the Manasota Property.

28. Respondent has paid monies for the improvements to the Manasota Property and has paid most of the expenses associated with that property.

29. All of the equity, right and title in and to the Manasota Property belongs to Respondent by virtue of the fact that (1) Respondent has paid all of the payments of principal on the various properties identified above; (2) Respondent has paid the vast majority of expenses associated with said properties; and (3) Petitioner has withdrawn more money from the equity in said properties than he has paid towards the properties.

*Petitioner Forged Respondent's Name on Credit Application*

30. On or about September 15, 2012, Petitioner forged Respondent's name on an application for a Wells Fargo line of credit (up to $50,000) and/or a Wells Fargo credit card (up to $10,000) without Respondent's knowledge or consent.

31. In fact, on the day that Petitioner forged Respondent's name at Wells Fargo, Respondent was actually at the bank waiting in the parking lot for Petitioner, yet Petitioner did not disclose to Respondent that he had signed her name.

32. Upon information and belief, Petitioner previously attempted to obtain credit from Wells Fargo in his own name but was turned down and, thus, he took to secretly forging Respondent's name to obtain the above-referenced credit card from Wells Fargo.

33. Petitioner charged at least $8,000 on said Wells Fargo credit card and failed to pay the same, which negatively impacted Respondent's credit.

34. Respondent discovered Petitioner's forgery and confronted him about the same. Respondent paid $8,079 to loan Petitioner the money to pay off the balance owed on the Wells Fargo credit card and Petitioner agreed to repay Respondent for this loan. However, Petitioner has failed to repay any amounts to Respondent.

*Respondent Other Loans to Petitioner*

35. In March 2015, Respondent made a loan to Petitioner in the amount of $4,000, and in August 2015, she made another loan to Petitioner in the amount of $2,500. Petitioner agreed to repay these loans to Respondent but, as of the date hereof, Petitioner has failed to repay said loans.

*Chris Craft & Key West Boats*

36. Respondent owned a 1936 Chris Craft boat that she purchased and paid tens of thousands of dollars to repair and/or restore the same.

37. Petitioner, illegally and without Respondent's prior knowledge or consent, interfered with Respondent's rights to the Chris Craft boat by causing it to be registered and/or licensed in his own name.

38. Petitioner further interfered with Respondent's rights to the Chris Craft boat by trading it for a Key West boat and, upon information and belief, $7,000 in cash. Petitioner gave part of the cash to Respondent but kept the rest of the cash.

39. Petitioner has titled the Key West boat in his name and claims it belongs to him.

40. Respondent is informed and believes that the Chris Craft boat is worth approximately $100,000 and that the Key West boat is only worth a small fraction of that amount.

41. Petitioner has deprived Respondent of possession and use of the Chris Craft boat, which has caused damage to Respondent.

42. As a result, Petitioner is liable to Respondent for the full value of Respondent's Chris Craft boat less the cash that he actually provided to Respondent.

## COUNT ONE: DECLARATORY JUDGMENT

43. Respondent re-alleges and incorporates paragraphs 1 through 42 as though set forth fully herein.

44. There exists a justiciable controversy between the parties with regard to their respective rights to the ownership, equity and interest in the Manasota Property.

45. Respondent seeks a declaratory judgment and related relief from the Court declaring that Respondent is entitled all of the equity, right, and title to, and possession of, the Manasota Property and the Key West boat, and that Petitioner is entitled to none of the same.

## COUNT TWO: BREACH OF CONTRACT

46. Respondent re-alleges and incorporates paragraphs 1 through 42 as though set forth

fully herein.

47. The parties entered into an agreement to pay their respective share of the payments and expenses associated with the above-referenced properties.

48. The parties also entered into agreements to take loans out against the 2895 Casco Property, and they further agreed that Respondent would make personal loans to Petitioner.

49. Petitioner breached the parties' agreement by, among other things, failing to pay his agreed upon share of the payments and expenses associated with the above-referenced properties, failing to repay his share of the loans against the 2895 Casco Property, and failing to repay the loans to Respondent.

50. As a direct and proximate result of Petitioner's breach of the parties' agreement, Respondent has been damaged and continues to be damaged in an amount to be proved at trial, and Petitioner is liable to Respondent therefor.

### COUNT THREE: PROMISSORY ESTOPPEL

51. Respondent re-alleges and incorporates paragraphs 1 through 42 as though set forth fully herein.

52. Petitioner made promises to Respondent that he would pay his share of the payments and expenses associated with the above-referenced properties, that he would repay his share of the loans against the 2895 Casco Property, and that he would repay the personal loans from Respondent.

53. Petitioner expected or should have reasonably expected his promises to induce substantial and definite action by Respondent.

54. Petitioner's promises did induce such action as Respondent, among other things and in reliance on those promises, purchased the above-referenced properties, allowed those properties

to be titled in the parties' names (rather than solely in her own name), paid the payments and expenses associated with the properties, allowed loans to be taken out against the properties for use of such things as making loans to EPC, and making personal loans to Petitioner.

55. Petitioner's promises must be enforced to avoid manifest injustice.

## COUNT FOUR: INJUNCTIVE/EQUITABLE RELIEF

56. Respondent re-alleges and incorporates paragraphs 1 through 42 as though set forth fully herein.

57. Respondent is entitled to a temporary and permanent injunction against Petitioner restraining him from forging Respondent's name or taking other steps to obtain credit using her name or credit, or taking any action, or failing to take any action, which causes waste, dissipation or disrepair to the Manasota Property and the Key West boat.

58. Respondent is further entitled to a temporary and permanent injunction against Petitioner requiring him to affirmatively take all necessary steps to maintain the Manasota Property while he continues to reside therein, as well as the Key West boat, including but not limited to paying the utilities, sewer, gas, electricity, and other expenses associated therewith.

59. Respondent is further entitled to injunctive and/or equitable relief in that Respondent is entitled to be named as the sole owner of the Manasota Property and the Key West boat, free and clear of any liens or other rights of Petitioner.

## COUNT FIVE: UNJUST ENRICHMENT

60. Respondent re-alleges and incorporates paragraphs 1 through 42 as though set forth fully herein.

61. Petitioner has been unjustly enriched at the expense of Respondent.

62. Alternatively or in addition to other remedies, as a direct and proximate result of

Petitioner's unjust enrichment, Petitioner is liable to Respondent in an amount to be proved at trial.

## COUNT SIX: EVICTION

63. Respondent re-alleges and incorporates paragraphs 1 through 42 as though set forth fully herein.

64. Petitioner has no equity or right to the Manasota Property, but he continues to reside therein.

65. Respondent is entitled to an order of the Court requiring Petitioner to vacate the Manasota Property.

## COUNT SEVEN: CONVERSION

66. Respondent re-alleges and incorporates paragraphs 1 through 42 as though set forth fully herein.

67. Petitioner converted property of Respondent, namely the Chris Craft boat, and traded the same without Petitioner's prior knowledge or consent.

68. As a direct and proximate result of Petitioner's conversion of Respondent's boat, Petitioner is liable to Respondent in an amount to be proved at trial.

## DEMAND FOR JURY TRIAL

Respondent and Counterclaimant DIANE SUPERNANT demands that all matters relative to the Petition and Counterclaims be heard by a jury.

**WHEREFORE**, Respondent respectfully request judgment as follows:

1. Denying all relief requested by Petitioner Richard Kail.

2. Ordering Petitioner to transfer his interest in the property located at 6811 Manasota Key Road and the Key West boat to Respondent.

3. Ordering Petitioner to vacate the property located at 6811 Manasota Key Road.

12

4. Awarding to Respondent all of the fixtures, furniture and all other personal property located at 6811 Manasota Key Road.

5. Granting Respondent money judgment on her counterclaim in an amount to be proved at trial.

6. Awarding Respondent all of the monies to be received, if any, from the EPC bankruptcy and/or from the settlement in the EPC case.

7. Awarding Respondent her attorney's fees and costs as allowed by law.

8. For such other and further relief as is just and equitable in the circumstances.

**SEAN A. SHIFF, PLLC**

By: /s/ Sean A. Shiff
   Sean A. Shiff, Esq. (*pro hac vice* counsel)
   Sean A. Shiff, PLLC
   2100 Rand Tower
   527 Marquette Avenue South
   Minneapolis, Minnesota 55402
   612-338-5599 (office)
   612-338-5161 (fax)
   Email: sshiff@shiff-law.com

**WOODS, WEIDENMILLER, MICHETTI & RUDNICK, P.L.**

By: */s/ Casey K. Weidenmiller*
   Casey K. Weidenmiller
   Florida Bar No. 521035
   9045 Strada Stell Court, Suite 400
   Naples, FL 34109
   (239) 325-4070 – Telephone
   (239) 325-4080 – Facsimile
   Email: cweidenmiller@lawfirmnaples.com
      scopeland@lawfirmnaples.com
      Attorneys for Respondent Diane Supernant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of March, 2016, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following counsel of record:

> Ryan D. Maxey, Esq.
> **Morgan & Morgan**
> 1641 Worthington Road, Suite 100
> West Palm Beach, FL  33409
> rmaxey@forthepeople.com

**SEAN A. SHIFF, PLLC**

> By: /s/ Sean A. Shiff
>     Sean A. Shiff, Esq. (*pro hac vice* counsel)
>     Sean A. Shiff, PLLC
>     2100 Rand Tower
>     527 Marquette Avenue South
>     Minneapolis, Minnesota 55402
>     612-338-5599 (office)
>     612-338-5161 (fax)
>     Email:  sshiff@shiff-law.com