UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD KAIL,

       Petitioner/
       Counterclaim Defendant,

vs.                                  Case No. 8:15-cv-2719-T-27TGW

DIANE SUPERNANT,

       Respondent/
       Counterclaimant.

_____/

## ORDER

**BEFORE THE COURT** is Petitioner/Counterclaim Defendant's Motion for Partial Summary Judgment (Dkt. 27), to which Respondent/Counterclaimant has responded in opposition (Dkt. 29). Upon consideration, Petitioner's motion is **GRANTED** as to Count Three of Respondent's counterclaim to the extent Count Three applies to the Sunset Drive property and the Casco Avenue property, and is otherwise **DENIED**.

## I. BACKGROUND

Petitioner and Respondent had a fifteen year relationship that began in 1999. (Dkt. 27 at p. 2; Dkt. 29 at p. 3). During their relationship, they purchased three parcels of real property in Minnesota, and one in Florida. (Dkt. 29 at p. 3). After their relationship ended, Petitioner filed a petition to partition the real property in Florida, (Dkt. 2), and Respondent removed the petition to this Court on the basis of diversity jurisdiction. (Dkt. 1). Respondent filed a counterclaim seeking declaratory relief as to the real property in Florida, and bringing various causes of action against Petitioner for contributions and payments allegedly owed for the Minnesota properties. (Dkt. 20).

The parties' first purchase was real property on 3866 Sunset Drive, Spring Park, Minnesota, in 1999 for approximately $464,309.16. (Dkt. 28-1; Respondent's Affidavit, Dkt. 30 at ¶ 3). They executed a written agreement on June 14, 1999 regarding the property, providing that Respondent had made the $169,309.16 down payment; Respondent would secure a loan for the remaining $295,000; Respondent would pay "a maximum of 50% of the total purchase price . . . which after down payment . . . totals $66,000 remaining"; Petitioner would make monthly mortgage payments of $2,037.49 "as his half of the purchase price"; and Petitioner would make payments to Respondent "to reimburse her for the amount of the mortgage payment." (Dkt. 28-1).[1]

Within a year after purchasing the Sunset Drive property, Petitioner failed to make the full monthly mortgage payments. (Respondent's Deposition, Dkt. 28-3 at 35:10-20). He ultimately paid between $20,000 to $30,000 towards the mortgage on the property, significantly less than half of the purchase price. (Respondent's Deposition, Dkt. 28-3 at 35:2-9).

The parties next purchased real property on 3753 Casco Avenue, Wayzata, Minnesota for $80,000 in 2002. (Dkt. 28-2; Respondent's Deposition, Dkt. 28-3 at 40:1-5). Respondent paid the purchase price with a $60,000 personal loan and $20,000 of her own funds. (Respondent's Affidavit, Dkt. 30 at ¶ 4). The parties executed a written agreement dated March 13, 2002 that provided, in part, that Respondent would secure the loan for purchase of the property; Petitioner would secure a construction loan; Respondent would make payments "at current place of residence [Sunset Drive] from start of project in the Spring of 2003 to the sale of said property in the summer of 2005"; and

---

[1] Respondent claims that the parties "had no long term plans to buy and sell real estate" at the time they purchased Sunset Drive. (Dkt. 29 at p. 2). However, Petitioner stated in verified answers to interrogatories that "the parties agreed that they would later repurchase 3753 [Casco Avenue] as an investment property," a property that Petitioner sold to his parents before the parties purchased Sunset Drive. According to Petitioner, Respondent insisted that "[Petitioner's] parents hold 3753 Casco so that both Petitioner and Respondent could reap significant profits from that property at a later date." (Dkt. 30-1, Ex. D at p. 11).

the parties would equally split the net profits from the sale of the property after repaying Respondent the $80,000 loan and repaying Petitioner for the construction loan. (Dkt. 28-2; Petitioner's Verified Answers, Dkt. 30-1, Ex. D at p. 10).

The parties intended to construct a house on the Casco Avenue property but could not obtain the necessary variance. (Respondent's Affidavit, Dkt. 30 at ¶ 4). Petitioner, therefore, did not obtain a construction loan. The parties sold the Casco Avenue property in 2003 for approximately $150,000. (Petitioner's Answers to Interrogatories, Dkt. 30-1, Ex. D at p. 10). They used those funds to repay Respondent the $20,000 she paid toward the purchase of the Casco Avenue property, expenses relating to the property, their vehicle loans, and to invest in the next property they purchased. (Respondent's Affidavit, Dkt. 30 at ¶ 4; Petitioner's Answers to Interrogatories, Dkt. 30-1, Ex. D at pp. 10, 12).

The parties next purchased real property at 2895 Casco Point, Orono, Minnesota in 2004. (Respondent's Affidavit, Dkt. 30 at ¶ 5). They sold Sunset Drive in 2004 as well, using the net proceeds from that sale toward the purchase of Casco Point. (Respondent's Deposition, Dkt. 28-3 at 36:3-25, 37:1-4). In 2005 and 2006, the parties took out loans totaling $450,000, secured by Casco Point, and used those funds to make a loan to epc Solutions, Inc. ("EPC"), a company owned by Petitioner's brother. (Dkt. 30 at ¶ 6). Respondent also personally loaned $50,000 to EPC. (Dkt. 30 at ¶ 6). EPC failed to fully repay the loans. (Dkt. 30 at ¶ 7).

The parties executed a written agreement to refinance the mortgage on Casco Point on February 3, 2013. (Dkt. 30-1, Ex. A). The refinancing agreement provided that "approximately $400,000" of the $512,442.59 still owed on the mortgage "is the responsibility of [Petitioner]." (Dkt.

30-1, Ex. A). The balance of the principal was to be paid with funds the parties received from a settlement agreement with Petitioner's brother and EPC. (Respondent's Affidavit, Dkt. 30 at ¶¶ 7-8).

The parties sold Casco Point in August 2013, and used the net proceeds from the sale to purchase real property at 6811 Manasota Key Road, Englewood, Florida for approximately $500,000.[2] (Respondent's Affidavit, Dkt. 30 at ¶ 9; Petitioner's Verified Answers, Dkt. 30-1, Ex. D at pp. 13-14). There is no written agreement governing their respective obligations for this property. (Dkt. 29 at p. 8). However, Petitioner signed a document on April 24, 2014 providing that "I Rick Kail will pay for remodeling the House @ 6811 Manasota Key Road Englewood, FL." (Dkt. 30-1, Ex. C).[3] Shortly after their relationship ended, Petitioner filed this lawsuit to partition the Manasota Key property. (Dkt. 27 at p. 2).

Respondent's counterclaim seeks damages from Petitioner under various causes of action based on his failure to abide by an agreement to equally contribute to the various properties they jointly owned over the past 15 years. (Dkt. 20). Petitioner's Motion for Partial Summary Judgment seeks partial judgment in his favor on Count Two (breach of contract), Count Three (promissory estoppel), and Count Five (unjust enrichment) of the counterclaim, limited to the extent those counts relate to the Sunset Drive property and the Casco Avenue property (Dkt. 27). Petitioner asserts that

---

[2] Respondent asserts that there was an understanding that the use of the net proceeds from the sale of Casco Point would be considered her contribution to the purchase of Manasota Key because "we each understood and acknowledged that I owned the equity carried over from the previous properties (Sunset Drive and 2895 Casco Point), which amounted to approximately $500,000." (Respondent's Affidavit, Dkt. 30 at ¶ 10). According to Petitioner, however, there was an understanding between the parties that "if I agreed to using my half from the sale of Casco Point to purchase 6811 Manasota Key, I'd never again hear about EPC Solutions." (Petitioner's Deposition, Dkt. 30-1, Ex. E at 109:17-24).

[3] Respondent's Affidavit provides context for this document signed by Petitioner. Respondent avers that the parties "agreed to look for a property that required a lot of remodeling, that [Petitioner] would pay approximately $400,000 to $500,000 in remodeling costs for the new property . . . and that he would make payments towards that property necessary to equalize our respective contributions to date." (Dkt. 30 at ¶ 10).

4

because they had written agreements governing the Sunset Drive and Casco Avenue properties, and because they sold those properties in 2004 and 2003, respectively, Respondent's claims are barred by the statute of limitations under either Florida or Minnesota law. (Dkt. 27).

## II.    STANDARD

### A.    *Partial Summary Judgment*

Partial summary judgment on a defense is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). All facts are viewed and all reasonable inferences are drawn in favor of the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the initial burden of showing that there are no genuine disputes of material fact. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, and admissions on file to designate facts showing a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. The nonmoving party's evidence "cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is

5

limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *See id.*

## III.   DISCUSSION

Before addressing whether the statute of limitations bars Respondent's claims for breach of contract, promissory estoppel, and unjust enrichment, it is necessary to examine the evidence relating to the parties' agreements. Respondent asserts that the parties' written agreements governing Sunset Drive and Casco Avenue were subject to a larger oral agreement to equally split the profits and expenses from their real property transactions, and that they orally modified the terms of the written agreements to allow Petitioner time to catch up on paying his equal share. Petitioner contends there never was any overarching, unwritten agreement or, alternatively, the parol evidence rule bars any evidence of an oral agreement. The details and timing of the parties' agreements are essential in determining when the statute of limitations began to run on Respondent's counterclaims.

### A.   *The Parties' Agreements*

Petitioner's Motion for Partial Summary Judgment and Respondent's response raise two issues: first, whether the parties intended the written agreements to be subject to a larger, oral agreement that the parties would engage in multiple real property transactions and equally split the profits and expenses of each transaction; and second, whether they modified the written agreements governing the Sunset Drive and Casco Avenue properties through subsequent oral agreements.

#### 1.   *Evidence of the Existence of a Larger Oral Agreement*

A written contract can be "part of a larger oral agreement." *See Redman v. Sinex*, 675 F. Supp. 2d 961, 964 (D. Minn. 2009).[4] "Where the parties do not intend the writing to embody the

---

[4] The parties agree that Minnesota law governs. (Dkt. 27 at pp. 6-7; Dkt. 29 at p. 13, n.4).

entire agreement between them, 'parol evidence can be used to prove the existence of a separate consistent oral agreement.' " *Id.* at 965 (quoting *Alpha Real Estate Co. v. Delta Dental Plan*, 664 N.W.2d 303, 312 (Minn. 2003)). Evidence of a larger oral agreement will not run afoul of the parol evidence rule if it "(1) is collateral in form; (2) is 'one the parties would not ordinarily be expected to embody in the writing,' or is not 'so clearly connected with the principal transaction as to be part and parcel of it,' and (3) does not contradict express or implied provisions of the written contract." *Id.* (quoting *Taylor v. Moore*, 263 N.W. 537, 539-40 (Minn. 1935)). Even where evidence of an oral agreement may be considered, "[h]owever, 'the written agreement may not be disputed as to the matters covered by it.' " *Id.* (quoting *Independent Harvester Co. v. Malzohn*, 179 N.W. 727, 727 (1920)). "If parol evidence may be used to prove that larger agreement, then there may be an issue of fact . . . . If not, there is no issue of fact." *Id.* at 964.

Petitioner asserts it is undisputed that he did not have a larger oral agreement with Respondent that governed the Sunset Drive and Casco Avenue written agreements. However, he relies only on the written agreements themselves and some excerpts from Respondent's deposition in support of his contention. (Dkts. 28-1, 28-2, 28-3). For her part, Respondent avers in her affidavit that the parties "purchased three real properties in Minnesota and one in Florida with the agreement and understanding that we would each contribute equally to the payments and expenses associated with those properties." (Dkt. 30 at ¶ 2).

Respondent also points to evidence that Petitioner believed that the 1999 Sunset Drive written agreement did not constitute the entire agreement between the parties. Petitioner stated in verified answers to interrogatories that at the time the parties purchased Sunset Drive, "the parties agreed that they would later repurchase 3753 [Casco Avenue] as an investment property," and

Respondent insisted on this arrangement. (Dkt. 30-1, Ex. D. at p. 11). The Sunset Drive written agreement does not include any terms reflecting an agreement to repurchase a property.

Because Respondent's evidence, if considered, would create a material issue of fact as to whether the Sunset Drive and Casco Avenue written agreements were subject to a larger oral agreement, and Petitioner provides no evidence on this issue other than the written agreements themselves,[5] a separate question is whether the parol evidence rule bars consideration of her evidence. It does not. A broad oral agreement to equally share in the expenses and profits of multiple real property transactions is not so clearly connected with the specific written agreements governing the Sunset Drive and Casco Avenue transactions as to be part and parcel with those transactions. *Redman*, 675 F. Supp. 2d at 965. With all inferences drawn in Respondent's favor, a reasonable factfinder could find that the oral agreement to equally share the financial responsibility for the several real property transactions supplements, rather than contradicts, the Sunset Drive and Casco Avenue agreements.

Petitioner accurately points out that even if a contemporaneous oral agreement existed, it cannot directly contradict the written terms the parties agreed would govern the Sunset Drive and Casco Avenue transactions. *See id.* Petitioner cites Respondent's deposition testimony to show that she was aware of his breaches of the Sunset Drive and Casco Avenue written agreements by the time the parties sold each property. (Dkt. 28-3). Petitioner, therefore, takes the position that the statute of limitations for breach of contract claims relating to Casco Avenue and Sunset Drive began

---

[5] Petitioner asserts that the Sunset Drive and Casco Avenue written agreements, in and of themselves, clearly evidence the parties' intent "of having separate written agreements for each property." (Dkt. 27 at p. 6). However, Respondent accurately points out that Petitioner "is referring to only two agreements, whereas there were four real estate transactions." (Dkt. 29 at p. 12). Since Petitioner provides no other evidence, such as an affidavit, of the parties' intent to have a separate written agreement for each transaction, the Sunset Drive and Casco Avenue written agreements do not preclude the existence of a larger oral agreement.

running in 2003 and 2004, respectively. These facts, standing alone, could bar Respondent's claims on statute of limitations grounds. However, Respondent provides evidence of oral modifications of the written agreements that must be considered.

### 2.   *Evidence of Oral Modification of the Written Agreements*

When a written contract "is unambiguous, a court gives effect to the parties' intentions as expressed in the four corners of the instrument, and clear, plain, and unambiguous terms are conclusive of that intent." *Knudsen v. Transp. Leasing/Contract, Inc.*, 672 N.W.2d 221, 223 (Minn. Ct. App. 2003). However, "a written contract may be modified by the parties' subsequent conduct." *Poser v. Abel*, 510 N.W.2d 224, 228 (Minn. Ct. App. 1994). "The general common law rule is that a written contract can be varied or rescinded by oral agreement of the parties." *Larson v. Hill's Heating & Refrigeration of Bemidji, Inc.*, 400 N.W.2d 777, 781 (Minn. Ct. App. 1987). "[W]hether such a modification occurred is a question for the factfinder." *Poser*, 510 N.W.2d at 228. "The parol evidence rule does not exclude evidence of subsequent oral modifications to a contract." *Flynn v. Sawyer*, 272 N.W.2d 904, 907 (Minn. 1978) (citations omitted).

While the limited evidence relied on by Petitioner could establish the absence of a dispute that the "two written agreements are authentic and governed the deal between the parties as to the Sunset Drive Property and the 3753 Casco [Avenue] Property," it does not foreclose a finding that the parties orally modified their agreements to account for the fact that Petitioner could not make the payments required by the agreements. (Dkt. 27 at pp. 5-6 (citing Respondent's Deposition, Dkt 27-3, at 5:17 to 7:1 & 40:6-13)). And Respondent provides persuasive evidence supporting this.

The 1999 Sunset Drive agreement evidences the parties' first attempt to equitably distribute the financial burdens by acknowledging Respondent's down payment and making Petitioner

responsible for the monthly mortgage payments. (Dkt. 28-1). However, he failed to make the full monthly mortgage payments the first year. (Respondent's Deposition, Dkt. 28-3 at 35:10-20). By the time the parties executed the Casco Avenue written agreement in 2002, Respondent agreed to take over payments on Sunset Drive and Petitioner agreed to assume full financial responsibility for the construction loan on Casco Avenue. (Dkt. 28-2). As noted, since the parties could not obtain a variance for Casco Avenue, there was no construction loan and therefore Petitioner did not make any construction loan payments.

The parties sold Sunset Drive in 2004. There is evidence of an agreement that "[i]nstead [of] doing an accounting and settling up with respect to our [Sunset Drive] 1999 agreement," the parties agreed to treat the net proceeds from the sale as Respondent's contribution to the $890,000 purchase price of Casco Point. (Respondent's Affidavit, Dkt. 30 at ¶ 5). In exchange, they agreed that Petitioner would be responsible for paying the mortgage to fund the balance of the purchase price. (Dkt. 30 at ¶ 5).

The evidence further indicates that in 2005 and 2006, the parties used a $450,000 loan secured by Casco Point and $50,000 of Respondent's personal funds to make a $500,000 loan to EPC, a company owned by Petitioner's brother. (Respondent Affidavit, Dkt. 30, at ¶ 6). EPC failed to fully repay the loan. (Dkt. 30, at ¶ 7). In 2013, the parties executed a written agreement to refinance the mortgage on Casco Point of approximately $512,000. The refinancing agreement provided that the parties would apply $110,000 in settlement payments from EPC to the mortgage and that Petitioner would be responsible for the approximately $400,000 balance. (Dkt. 30-1, Ex. B). When the parties sold Casco Point in 2013, they rolled the net proceeds into the purchase of the Manasota Key property. While Respondent believes that the parties agreed to treat all of the Casco

Point sale proceeds as her contribution to the purchase of Manasota Key, (Respondent's Affidavit, Dkt. 30 at ¶ 10), Petitioner apparently believes the purchase of Manasota Key included an agreement that using his half from the sale meant he'd "never again hear about EPC Solutions," (Petitioner's Deposition, Dkt. 30-1, Ex. E at 109:17-24). Petitioner also signed a document stating he "will pay for remodeling" at Manasota Key. (Dkt. 30-1, Ex. C).

Considering Petitioner's motion for summary judgment, there is a question of material fact whether the parties orally modified the Sunset Drive and Casco Avenue written agreements to extend Petitioner's obligation to "equalize the contributions." (Dkt. 30 at ¶ 8). And there is a material question of fact whether the latest modification occurred with the purchase of the Manasota Key property in 2013, because of its relationship to past transactions. The parties used the net proceeds from the sale of Casco Point (which itself was purchased with net proceeds from the sale of Sunset Drive) to purchase Manasota Key, Petitioner signed a document indicating he would pay for all remodeling costs, and Petitioner testified that he believed the failed EPC loan was also a consideration in the purchase.[6] For these reasons, the evidence, viewed in the light most favorable to Respondent, creates a material issue of fact as to whether the parties extended the Sunset Drive

---

[6] *In re Estate of Giguere* provides an example of an oral modification delaying the accrual of a cause of action based on a written instrument. *See* 366 N.W.2d 345 (Minn. Ct. App. 1985). In that case, a borrower obtained a loan in 1969 evidenced by a promissory note payable in 90 days. *Id.* at 346. When the lender demanded payment 90 days later, the borrower was unable to pay. *Id.* The parties orally agreed that the borrower could repay the loan after selling his lake home. *Id.* The borrower sold his lake home in 1981, but did not repay the lender before passing away in 1983. *Id.* The borrower's estate asserted a statute of limitations defense to the lender's action to recover the value of the loan. *Id.* On review, the Minnesota Court of Appeals first noted that the lender "did not file his claim until October 1983, more than 8 years after the statute of limitations had run." *Id.* However, the court concluded that the "oral extension . . . was a valid and binding modification of the promissory note" that delayed accrual of the lender's cause of action. *Id.* at 347.

and Casco Avenue written agreements by oral modification until, at least, they purchased the Manasota Key property in 2013.[7]

### B.    The Statute of Limitations Applicable to the Parties' Agreement

Petitioner's Motion for Partial Summary Judgment fails if Respondent's November 25, 2015 counterclaim (Dkt. 3) was filed within the applicable statute of limitations for her claims of breach of contract, promissory estoppel, and unjust enrichment. Minnesota's statute of limitations is six years for a breach of contract claim, promissory estoppel claim, and unjust enrichment claim. MINN. STAT. § 541.05(1) (2015). Florida's statute of limitations is five years for a breach of contract claim, four years for an promissory estoppel claim, and four years for an unjust enrichment claim. FLA. STAT. § 95.11(2)-(3) (2015).

As to Respondent's breach of contract claim in Count Two of her counterclaim, as discussed, there is a factual dispute as to whether she filed her claim within the statute of limitations. There is evidence that the parties orally modified the Sunset Drive and Casco Avenue agreements when they purchased the Manasota Key property in 2013. Assuming Respondent's evidence of an oral modification to be true, for purposes of summary judgment, the statute of limitations did not begin to run until Petitioner breached the oral agreement. *See In re Estate of Giguere,* 366 N.W.2d at 347 ("The oral extension between [lender] and [borrower] was a valid and binding modification of the promissory note. Accordingly, the statute of limitations began to run on the date the Elk Lake

---

[7] It is difficult to agree with Petitioner's suggestion that Respondent has "deceptively" asserted the existence of an oral agreement between the parties. (Dkt. 27 at p. 4). Petitioner effectively does not dispute that he breached the Sunset Drive Casco Avenue written agreements. A reasonable factfinder could certainly conclude on the evidence that Respondent took no action on Petitioner's initial breaches of the written agreements because he orally agreed that he would contribute his share of the financial contributions in other ways.

Property was sold."). Petitioner is therefore not entitled to summary judgment on Count Two of Respondent's counterclaim on statute of limitations grounds.

Respondent also seeks damages for unjust enrichment in Count Five. Unlike the other claims, her unjust enrichment claim is not directed to specific transactions, but rather seeks general equitable relief. (Dkt. 20 at ¶¶ 60-62). Petitioner asserts that "the latest any claim for Unjust Enrichment regarding the purchase of either of these properties would have to have been brought is 2010" because "the Sunset Drive Property was sold in 2004, and the 3753 Casco [Avenue] Property was sold in 2003." (Dkt. 27 at p. 10). However, Respondent points to evidence that the parties agreed to give Petitioner opportunities to equalize his share of financial contributions in future transactions in lieu of settling up when they sold Sunset Drive and Casco Avenue. It therefore cannot be said with certainty that Respondent's unjust enrichment claim accrued by 2003 or 2004, in light of the evidence that the parties worked well beyond those dates and set up the purchase of Manasota Key in 2013 to adjust their respective shares of financial responsibility for the very purpose of preventing Petitioner from receiving an unequal benefit at Respondent's expense.

As to Respondent's promissory estoppel claim in Count Three, Respondent asserts that Petitioner made promises to pay his share of the expenses associated with all of the properties and to repay the personal loans from Respondent. In reliance on those promises, she "purchased the . . . properties, allowed those properties to be titled in the parties' names . . . paid the payments and expenses associated with the properties, allowed loans to be taken out against the properties for such things as making loans to EPC, and [made] personal loans to Petitioner." (Dkt. 20 at ¶¶ 51-54). Each of Petitioner's promises, and Respondent's reliance, relating to Sunset Drive and Casco Avenue, however, could have occurred no later than when those properties were sold.

13

Unlike Respondent's breach of contract claim, for which she presents competent evidence that the parties orally modified their written agreement, her promissory estoppel claim is limited to Petitioner's promises. There is no genuine dispute that Respondent knew by 2004 that Petitioner did not keep his promise to "pay his share of the payments and expenses associated with" Sunset Drive and Casco Avenue. (Dkt. 20 at ¶ 52). And because Respondent did not bring her counterclaim until 2015, the statute of limitations bars her promissory estoppel claim in Count Three, to the extent it seeks to enforce promises Petitioner made regarding the Sunset Drive and Casco Avenue properties.

IV.    **CONCLUSION**

Petitioner's Motion for Partial Summary Judgment is **GRANTED** as to Count Three of Respondent's counterclaim for promissory estoppel to the extent it seeks to enforce promises Petitioner made regarding the Sunset Drive and Casco Avenue properties. The motion is otherwise **DENIED**.

**DONE AND ORDERED** this 24ᵗʰ day of February, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

14